**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BILL VAUGHN,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No: 2:06-cv-1027** |
| | : | |
| **v.** | : | **JUDGE MARBLEY** |
| | : | |
| **RENT-A-CENTER, INC., et al.** | : | **MAGISTRATE JUDGE KEMP** |
| | : | |
| **Defendants.** | : | |

## <u>OPINION & ORDER</u>

## I. INTRODUCTION

This matter is before the Court on Defendant Rent-A-Center, Inc.'s ("Rent-A-Center")

Motion for Summary Judgment (doc. no. 29). Plaintiff, Bill Vaughn filed a four-count complaint

against Defendants alleging violations of the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12181, et seq. (Count I); Ohio disability discrimination law, Ohio Rev. Code §4112

(Count II); battery (Count III); and Assault (Count IV). Defendant Rent-A-Center seeks

summary judgment on all counts. For the reasons explained below, Rent-A-Center's Motion for

Summary Judgment is **DENIED**.

## II. FACTS

### A. Facts

Bill Vaughn ("Vaughn") is an Ohio resident who suffers from multiple-sclerosis and a

spinal cord injury caused by a 1982 car accident. As a consequence of his physical impairment,

Vaughn has used a service dog since 1991 to help him walk. His service dog during the time

period relevant to this suit was named Hannibal. Vaughn began working with Hannibal in

approximately 2002.

Hannibal helps Vaughn in a number of ways.  He helps Vaughn maintain his balance, navigate stairs and uneven ground, and stand up if he falls.  Hannibal also assists Vaughn in an out of chairs, cars, beds, and the shower.  Hannibal carries items for Vaughn.  More generally, using a service dog helps Vaughn remain mobile which works to prevent muscle atrophy and to keep him from becoming wheelchair bound.  Vaughn states that he cannot walk without the assistance of his dog or a cane and that this has was true at the time of the events giving rise to this suit.  He also claims that he does not leave the house without Hannibal and only uses his cane around the house or in his yard.

When moving or standing, Vaughn keeps Hannibal on a harness comparable to that worn by a seeing-eye dog.  Hannibal also wears an extendable leash which Vaughn can use to give the dog space to lay down when Vaughn sits down.  Hannibal has an orange ADA tag made by Vaughn, which can be clipped to his harness.  Finally, Hannibal has a cape with the ADA insignia on it, which he rarely wears.

Vaughn has shopped at Rent-A-Center stores three times, each trip was related to purchasing a particular bed Vaughn had seen in a flyer mailed to his home.  First, on August 31, 2006 Vaughn, his wife, Georgia Bice ("Bice"), and Hannibal went to a Rent-A-Center Store located in Delaware Ohio ("Delaware Store") to shop for the bed they had seen in the flyer.  During the shopping trip, Carol Lemaster ("Lemaster"), the Delaware Store manager asked Vaughn about his dog.  Vaughn responded that the dog was a service dog and was permitted to shop without incident.  The bed, however, was not in stock and Vaughn and Bice left within a few minutes.

Two weeks later, on September 13, 2006, Vaughn and Bice stopped by the Rent-A-Center store in Marion, Ohio ("Marion Store") to see if they had the bed. Vaughn entered the store accompanied by his wife and his dog. While at the Marion Store, Vaughn was permitted to shop with Hannibal without incident. The store manager, however, informed him that the Marion Store could not deliver the bed to Vaughn's home. The manager gave Vaughn an application for the bed and suggested that he order the bed from the Delaware Store because that store could deliver to Vaughn's home.

Later that afternoon Vaughn and Bice returned to the Delaware Store to order the bed. It was during this third visit that the incidents giving rise to this suit occurred. The parties present very different versions of what occurred during Vaughn's visit to the Delaware Store on September 13, 2006.

Vaughn claims that as soon as he attempted to enter the Delaware Store a Rent-A-Center employee named Ronald Pettry ("Pettry") approached him and told him he could not bring the dog into the store. Vaughn claims that Hannibal was in a harness at the time and that the orange ADA tag was clipped onto the harness. Vaughn asserts that he tried to explain to Pettry that Hannibal was a service dog not a pet but that Pettry would not listen. Vaughn pointed out the orange ADA tag, but, according to Vaughn, Pettry told him to "shove the tag," and said that he couldn't allow the dog into the store because the dog would get hair and fleas on the furniture.

Vaughn states he went to the car to get papers that explained the ADA's requirements. Pettry followed him out to the sidewalk in front of the store. When Vaughn returned with the papers, he claims that he told Pettry that Hannibal was a service dog and that Pettry was breaking the law by excluding him from the store. Pettry purportedly threw the papers back in Vaughn's

face without reading them, accused Vaughn of trying to make him look like a "fucking moron," and told Vaughn that the dog could not enter the store.

Vaughn claims he then told Pettry that he would not leave without his wife, who was still in the store. Vaughn tried to enter the store again with Hannibal to get his wife but claims that as he tried to enter, Pettry pulled the door closed on Vaughn's right arm. Pettry then allegedly grabbed Vaughn's shirt with one hand and tried to push him out the door. Vaughn states that he extricated himself from the door. By this time, his wife heard the commotion and came to the front of the store. Vaughn and Bice left the Delaware Store. They have not been in a Rent-A-Center store since the September 13, 2006 incident.

Rent-A-Center's version of the incident is almost entirely different. It claims that Vaughn and Hannibal were allowed to enter the store but that the dog misbehaved. Pettry, LeMaster, and Brian McCord, the store employees present at the time of the incident, all claim that Hannibal was not wearing a harness or any other indication that the dog was a service dog. Pettry claims that he saw the dog brush up against couches in the store. At that time, he says he asked Vaughn to control his dog. A short time later, however, Pettry and LeMaster claim they saw Hannibal put his front paws up on a couch. Pettry and LeMaster say that Pettry asked Vaughn to control the dog again, that Vaughn became angry, and that he called Pettry a "fucking moron." Pettry says he asked Vaughn to leave the store because of his inappropriate behavior. A few minutes later Vaughn opened the door of the store, called Pettry a "fucking moron" again, mentioned for the first time that Hannibal was a service dog, and said he was going to sue Rent-A-Center.

## B. Procedural History

As a result of the September 13, 2006 incident, Vaughn file a complaint against Rent-A-Center and a John Doe defendant employee of the Delaware Rent-A-Center Store. Vaughn has subsequently identified Pettry as the John Doe. (Pl.'s Summ. J. Opp'n Mem. 1,4.) In the Complaint, Vaughn alleges that Rent-A-Center denied him full and equal enjoyment of its goods and services in violation of the ADA (Count I) and Ohio discrimination law (Count II) when Pettry denied him access to the Delaware Store. He also alleges that Pettry committed battery (Count III) and assault (Count IV) when he allegedly shoved him and pulled the door closed on his arm to prevent him from re-entering the store with his dog. On August 15, 2008, Defendant Rent-A-Center moved for summary judgment on all Counts.

## III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [and] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at

251-52.

## IV.  LAW & ANALYSIS

### A.  ADA and Ohio Disability Discrimination Claims

Title III of the ADA provides that:

> [n]o individual shall be discriminated against on the basis of disability in the full
> and equal enjoyment of the goods, services, facilities, privileges, advantages, or
> accommodations of any place of public accommodation by any person who owns,
> leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).[3]  Discrimination under the Act is defined to include a business's failure to

make reasonable modifications in policies and practices when modifications are necessary to

provide goods and services to disabled  individuals, unless the business can show that making

such modifications would fundamentally alter the nature of the goods and services provided.  42

U.S.C. § 12182(b)(2)(A)(iii).  The Department of Justice has been tasked by Congress with the

duty to promulgate regulations that flesh out the requirements of the ADA.  *Bragdon v. Abbott*,

524 U.S. 624, 646 (1998).  With regard to disabled people who use service animals, the

Department of Justice regulations state that "[g]enerally, a public accommodation shall modify

---

[3]  The Court is aware that the ADA was recently substantively amended by the ADA
Amendments Act of 2008, which became effective on January 1, 2009.  These amendments do
not apply retroactively, however, and this Court must decide this case without regard to those
amendments, using the law in force at the time the complained of activity occurred.  *Verhoff v.
Time Warner Cable, Inc.*, Nos. 07-4265, 07-4348, 2008 WL 4691794, at *4 (6th Cir. Oct. 24,
2008); *EEOC v. Agro Distrib. LLC* ,— F.3d —, 2009 WL 95259, at *8 (5th Cir. Jan. 15, 2009)
(2008 ADA Amendments do not apply retroactively); *Supinski v. United Parcel Serv., Inc.*, No.
3:cv-06-0793, 2009 WL 113796, at *5 n.6 (M.D. Pa Jan. 16, 2009) (collecting cases) ("every
court that has addressed the issue has concluded that the 2008 Amendments cannot be applied
retroactively to conduct that preceded its effective date").

policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1).

To establish a prima facie case of discrimination under Title III of the ADA, a plaintiff must prove that : (1) he has a disability; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) he was denied full and equal treatment because of his disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). The only remedy available to a private litigant under Title III of the ADA is injunctive relief and attorney's fees and costs. 42 U.S.C. § 12188(a)(1); *Davis v. Flexman*, 109 F.Supp.2d 776, 783 (S.D. Ohio 1999). Monetary damages cannot be recovered. 42 U.S.C. § 12188(a)(1); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Rent-A-Center claims that it is entitled to summary judgment on Vaughn's ADA and Ohio disability discrimination claims because he has failed to show: (1) that he has standing to pursue injunctive relief; (2) that he is disabled as defined by those acts; (3) that Hannibal qualifies as a service dog; or (4) that he was discriminated against because of his disability. Ohio courts look to federal ADA law when interpreting the Ohio disability discrimination law. *Columbus Civ. Serv. Comm'n. v. McGlone*, 697 N.E.2d 204, 206-07 (Ohio 1998) (stating that the ADA is similar to Ohio discrimination law and thus, "[w]e can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law."). Therefore, this Court will apply federal standards to resolve both Vaughn's ADA and Chapter 4112 claims. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 450 (6th Cir. 2007).

*1. Standing*

As a threshold matter, this Court must address Rent-A-Center's argument that Vaughn lacks standing to pursue injunctive relief. *Access 4 All, Inc. v. Chicago Grande, Inc.*, No. 06 C 5250, 2007 WL 1438167, at *4 (N.D. Ill. May 10, 2007) ("even if Plaintiffs have been injured within the meaning of Title III of the ADA, they must also show that their injuries satisfy the standing requirements of Article III of the Constitution"). As an Article III court, this Court only has the power to resolve actual cases and controversies. U.S. Const. art. III, §2; *Sprint Commc'ns Co., L.P. v. APPCC Servs., Inc.*, 128 S.Ct. 2531, 2535 (2008). The case or controversy requirement is only satisfied if this Court can satisfy itself that the plaintiff has standing. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). Standing is evaluated based on the facts as they existed at the time the complaint was filed. *Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513, 524 (6th Cir. 2001).

The party seeking federal court action has the burden of establishing standing. *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002). This burden increases as the litigation proceeds. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (standing elements must be proven "with the manner and degree of evidence required at the successive stages of litigation"). As this case is at the summary judgment stage, generalized allegations of standing will not suffice. *Ctr. For Biological Diversity v. Lueckel*, 417 F.3d 532, 537 (6th Cir. 2005). Instead, Vaughn must "'set forth specific facts,' in affidavits or through other evidence, demonstrating that each element of standing is satisfied." *Id*.

To satisfy the constitutional standing requirements a plaintiff must show: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical; (2) the injury is fairly traceable to the challenged act of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Where, as in this case, a plaintiff seeks injunctive relief he must demonstrate that there is a non-speculative, imminent threat of repeated injury to establish that there is an injury in fact. *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983); *Fieger v. Michigan Supreme Court*, — F.3d —, 2009 WL 113568, at *9 (6th Cir. Jan. 20, 2009). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). "'Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate-as opposed to merely conjectural or hypothetical-threat of future injury.'" *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994); *accord Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("A threatened injury must be 'certainly impending' to constitute injury in fact" (internal quotation marks omitted)).

In *Lujan v. Defenders of Wildlife*, the Supreme Court examined whether a plaintiff had standing to seek injunctive relief. 504 U.S. 555, 561 (1992). In that case, plaintiff-environmental groups challenged a rule promulgated by the Secretary of Interior which limited the application of the Endangered Species Act to actions within the United States. *Id*. at 557-558. Plaintiffs sought a declaratory judgment that the new rule was erroneous and an injunction requiring the Secretary to create a new regulation. *Id*. at 559. Plaintiffs claimed that they were injured by the new regulation because it would permit construction projects abroad that would

increase the rate of extinction of endangered species. *Id*. at 562. They supported their standing argument by submitting the affidavits of two members. Both members averred that they had traveled abroad in the recent past to observe the habitat of endangered animals and that they intended to do so again in the future. *Id*. at 563. One member admitted that she had no current plans to return but merely planned to return "in the future."

The Court held that the plaintiff organizations had not shown that they had suffered an injury in fact as necessary to confer standing. *Id*. at 564 The Court explained that the affidavits "plainly contain no facts . . . showing how damage to the species will produce 'imminent' injury" to the organizations members. *Id*. at 564. Regarding the affidavit evidence, the Court concluded that "[s]uch 'some day' intentions without any description of concrete plans, or indeed even any specification of when the some day will be-do not support a finding of the 'actual or imminent' injury that our cases require." *Id*. at 564. Thus, *Lujan* establishes that to demonstrate standing to pursue injunctive relief Vaughn's allegations of future injury must be concrete and supported by facts showing that such injury is indeed imminent.

### a. Standing in the Context of ADA Title III Cases

Neither the Supreme Court nor the Sixth Circuit Court of Appeals has addressed standing issues in Title III ADA cases comparable to the case *sub judice*. However, numerous district courts and other circuit courts have done so. In the ADA context, a plaintiff must establish a likelihood of returning to the defendant's business to demonstrate a real threat of future harm. *See, e.g., Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137-38 (9th Cir. 2002); *Molski v. Arby's Huntington Beach*, 359 F.Supp.2d 938, 946 (C.D. Cal. 2005*); Parr v. L & L Drive-Inn Rest.*, 96 F.Supp.2d 1065, 1079-

80 (D. Haw. 2000) (plaintiff must demonstrate a sincere intent to return); *Davis v. Flexman*, 109 F.Supp.2d 776, 784 (S.D. Ohio 1999) (patient lacked standing to seek injunctive relief under ADA where there was no evidence that she intended to return to the clinic). To determine whether an ADA plaintiffs' likelihood of returning to defendant's facility is sufficient to confer standing courts have considered: "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *D'lil v. Stardust Vacation Club*, No. 2:00-CV-01496, 2001 WL 1825832, at *3 (E.D.Cal. Dec. 21, 2001).

Rent-A-Center asserts that Vaughn lacks standing to pursue injunctive relief because he has not and cannot show that there is a real and immediate threat that he will be wronged again. Rent-A-Center points out that the complaint does not allege that Vaughn ever intends to return to the Delaware Store at which he claims to have been denied service. Similarly, in their deposition testimony, Vaughn and his wife both admitted that they have not visited any Rent-A-Center location since the September 13, 2006 incident, that they only visited the Delaware Store on one other occasion to look for a particular bed, and that neither of them stated that they ever intended to return to any Rent-A-Center location in the future.

In response, Vaughn argues that he suffered a particularized incident when he was denied access to the Delaware Store on September 13, 2006. He reasons that "[h]aving been exposed to the barrier known as Pettry when attempting to purchase a bed at the [Delaware Store] Vaughn has amply proved actual knowledge of the barrier and the consequences thereof" and that he did not need to return to the store in a "futile gesture" to establish standing. (Pl.'s Summ. J. Opp'n Mem. 20). He also provides an affidavit in which he states, "[i]f I knew that I would be allowed

entry [to the Delaware Store] with my service animal and that my physical safety was not in danger, I would avail myself of the services of the store again in the future." (Vaughn Aff . ¶6.) Rent-A-Center retorts that this declaration is too speculative and insubstantial to establish a sincere intention to return to the Delaware Store or any likelihood of substantial and imminent injury.

Based on the legal framework set out above and the record before the Court, the Court concludes that Vaughn has standing to seek injunctive relief under Title III of the ADA. To show an actual and imminent injury, Vaughn must demonstrate his intent to return to the Delaware store in the future. *Steger*, 228 F.3d at 893. To that end, Vaughn has provided an affidavit stating that he would "avail [himself] of the services of the [Delaware] store again in the future." Moreover, a consideration of the four factors used to assess a plaintiff's likelihood of returning, demonstrates that Vaughn is likely to return.

First, Vaughn's past patronage of Rent-A-Center makes it likely that he will return and counsels in favor of finding standing. Vaughn and his wife stated in their deposition testimony that they had patronized Rent-A-Center Stores on three previous occasions. The fact that Vaughn has not returned to any Rent-A-Center stores since the incident in the Delaware Store does not defeat standing. Vaughn was not required to have engaged in the "futile gesture" of returning to the Delaware Store, knowing it to be inaccessible, to establish standing. 42 U.S.C.

§12188(a)(1).[5]  Thus, Vaughn's shopping history suggests that he will return to the Delaware Store.

Second, the Court considers the proximity of defendant's business to Vaughn's residence and Vaughn's frequency of travel near the Delaware Store.  Vaughn lives in Lewis Center, Ohio which is less than 10 miles from the town of Delaware, Ohio.  Neither Vaughn nor his wife has specifically testified about how far they lived from the Delaware Store or how frequently they travel near the Delaware Store.  At oral argument, however, Vaughn's counsel stated that the Delaware Store is approximately 2-3 miles south of Vaughn's home, that the Delaware shopping district is the second closest shopping area to Vaughn's home, and that Vaughn must travel through Delaware to visit his sister who lives in Marion, Ohio.  Vaughn and Bice's testimony supports that they do indeed travel to Marion to visit Vaughn's sister.  The relative proximity of the towns suggests that Vaughn does not live so far from the Delaware Store that his return would be geographically improbable.  *C.f. Harris v. Del Taco, Inc.*, 396 F.Supp.2d 1107, 1114 (C.D. Cal. 2005) (finding plaintiff's statement that he intended to return to defendant's restaurant incredible in part because he lived nearly 600 miles away from the restaurant).

Finally, the definitiveness of Vaughn's plan to return is not so vague that it defeats standing.  Vaughn has not expressed a concrete plan to return to the Delaware Store at a particular date, however, that is not a *sine qua non* to establish standing.  *See Parr*, 96 F.Supp.2d at 1079 (finding that plaintiff did not have to specify a precise time and date on which he

---

[5]  Such a requirement would violate the express language of the ADA's enforcement provision which states:

> Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.

42 U.S.C. §12188(a)(1).

intended to return to defendant's restaurant to establish standing). Courts have found that standing exists where an ADA plaintiff has asserted some credible reason for his desire to return to the property in question. *Access 4 All, Inc., v. Chicago Grande, Inc.*, No. 06 C 5250, 2007 WL 1438167, at * 7 (N.D. Ill. May 10, 2007). Vaughn has done so in this case. He testified at his deposition that he had shopped at Rent-A-Center several times in the past and that the Delaware Store delivers to his home while other Rent-A-Center locations do not. (Vaughn Dep. 62); *see Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1040 (9th Cir. 2008) (finding standing were plaintiff's statement that he would return to the store if the access barriers were repaired was supported by his allegations that he had visited the store on 10-20 prior occasions, the store was located near his favorite restaurant in the city, and he planned to visit the city at least once a year on annual trips to Disneyland).

Here, assuming a jury finds Vaughn's version of events credible, he has established that he attempted to enter the Delaware Store but that Pettry denied him access because of his dog. Pettry still works at the Delaware Store. (Pettry Dep. 7.) He has also stated that he would patronize the store again but is deterred from doing so due to the Store's refusal to comply with the ADA by letting him shop with his service dog. Accordingly, Vaughn he has established an imminent risk of future injury sufficient to confer standing. *See Access 4 All, Inc., v. Om Mgmt.*, LLC, No. 2:06-CV-0374, 2007 WL 1455991, at *8 (S.D. Ohio May 15, 2007) ("If a plaintiff visits a property once and is subjected to discrimination in violation of the ADA, a court can conclude that the disabled individual may visit the property again without filing the legal formality of indicating that but for the . . . barriers, the disabled plaintiff will return to the property"); *Sterger*, 228 F.3d at 893 (blind plaintiff established standing under Title III where he

showed that prior to commencing suit he had visited defendant's restaurant one time and was unable to access the men's restroom because the signage was not ADA compliant).

## 2. *Disability*

To make out a prima facie case of disability discrimination, a plaintiff must show that he is "disabled" as that word is defined under the law. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).[4]  A disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities."  42 U.S.C. § 12102(2)(A); *see also* Ohio Rev. Code § 4112.01(a)(13).   Walking and standing are major life activities.  42 U.S.C. § 12102(A); 29 C.F.R. § 1630(I); *Penny v. United Parcel Service*, 128 F.3d 408, 414 (6th Cir. 1997).

Determining whether a plaintiff is disabled requires an individualized, case-by-case inquiry.  *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 337 (6th Cir. 2002).  Merely having a physical impairment or medical diagnosis does not make a plaintiff disabled under the ADA, unless that impairment substantially limits a major life activity.  *Id.*; *Bryson v. Regis Corp.,* 498 F.3d 561, 575 (6th Cir. 2007).  A major life activity is "substantially limited" if the individual cannot perform the activity but an average person could or if the manner in which the individual can perform the activity is "significantly restricted as to the condition, manner or duration . . . as compared to . . . [an] average person in the general population."  29 C.F.R. § 1630.2(j).  An impairment that "only moderately or intermittently" prevents a person from performing a major life activity is not a substantial limitation.  *Mahon v. Crowell*, 295 F.3d 585, 590 (6th Cir. 2002).

---

[4]  A plaintiff can also be covered under the ADA if he is regarded as having a disability.  42 U.S.C. § 12102(2)(C).  In this case, however, Vaughn does not argue, nor has he presented any evidence that he was regarded as having a disability by Rent-A-Center, nor would such an argument mesh with Vaughn's version of events.  Thus, the Court will not address this issue.

Finally, "[m]oderate difficulty or pain experience while walking does not rise to the level of a disability." *Penny*, 128 F.3d at 415.

There is no dispute in this case that Vaughn has a physical impairment related to his back injury and multiple sclerosis. Vaughn claims that this impairment constitutes a substantial limitation on his ability to walk and to stand. (Pl.'s Summ. J. Opp. Mem. 16.) Rent-A-Center argues, however, that Vaughn has not produced evidence that his impairment has substantially limited his ability to walk or stand. Vaughn submitted three unsworn doctor's letters and the deposition testimony of himself and his wife as evidence that he is disabled.

Rent-A-Center argues that the Court cannot consider the unsworn doctor's letters at the summary judgment stage. The Court agrees. While there is no absolute bar on the use of unverified documents to oppose summary judgment, a court may only consider admissible evidence when ruling on a motion for summary judgment. *Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001). The doctor's letters put forth by Vaughn are neither affidavits nor deposition testimony, instead they are unsworn, out-of-court statements that Vaughn attempts to use to prove the matter asserted, i.e. that he is disabled and needs a service dog to walk. Vaughn has not made any showing that these letters fit any hearsay exception. Thus, the letters are inadmissible and cannot be considered by the Court while ruling on Rent-A-Center's summary judgment motion. *Vance v. Wade*, 546 F.3d 774, 779-80 (6th Cir. 2008) (unsworn medical evaluation was hearsay and could not be considered on a motion for summary judgment); *Fall v. New York State United Teachers*, 289 F.App'x 419, 421 n.3 (2d Cir. 2008) (unsworn doctor's

report constituted inadmissible hearsay and could not be used by ADA plaintiff to oppose summary judgment).[5]

Vaughn has, however, also provided evidence of his disability in the form of deposition and affidavit testimony from himself and his wife. Vaughn and his wife testified at their depositions that in 2006 Vaughn could not walk without Hannibal's assistance or the use of a cane; that he cannot locomote safely or keep his balance without the dog; that he cannot stand up after falling without the dog's help; that the dog helps him get in and out of chairs, beds, cars and the shower; and that the dog carries items for him.[6] (Vaughn Dep. 34-35, 39, 46-47; Vaughn Aff. ¶ 4-5; Bice Dep. 28.) The record also shows that Vaughn has been unable to drive since 2006 as a result of his impairment. (Bice Dep. 26.) It is not clear from Vaughn and his wife's deposition testimony whether all of this was true at the time of the incident. But, considering the evidence in the light most favorable to the non-movant Vaughn, the Court interprets this testimony as an assertion that at the time of the incident, Vaughn's impairment was so great that he could not walk at all without the aid of his dog or his cane and that he could not stand up after

---

[5] Moreover, only the July 31, 2001 letter from Robbie J. Cooksey, D.O., actually support's Vaughn's claim that he required a service dog at the time of the 2006 incident. That letter predates the incident and states that Vaughn "requires the assistance of a working dog to help him balance and coordinate. It is considered medically necessary for him to have the dog's assistance." (Pl.'s Summ. J. Opp. Mem. Ex. B.) The other two letters are both from Dr. Kathleen Hawker and both post-date the 2006 incident. (*Id.*, Exs. C, G.) Although both of those letters mention that Vaughn uses a service dog, they do not express an opinion on whether he needs the dog to walk. (*Id.*)

[6] Rent-A-Center characterizes this evidence as "self serving and conclusory statements" and claims that it cannot be used to raise an issue of fact to defeat summary judgment. But courts no longer bar a party from testifying on its own behalf merely because that testimony is necessarily "self-serving." *see* 1 Kenneth S. Broun, McCormick on Evidence §65 (6th ed.). Furthermore, Rent-A-Center has not come forward with any evidence that contradicts Vaughn's testimony. Consequently, this argument is unavailing.

falling or maintain his balance without the dog.[7]  A reasonable jury could find that the inability to walk at all without the assistance of a dog or a cane and the inability to rise after falling constituted a substantial limitation on Vaughn's ability to stand and walk.  *C.f. Mariazale v.  BP Prods. N. Am., Inc.*, No. 1:05cv741, 2007 WL 4224367, at *6 (S.D. Ohio Nov. 27, 2007) (finding that plaintiff was not substantially limited in the major life activity of walking because the pain she experienced while walking was "not so great that it prevents her from walking, or forces her to use a device such as a cane or a wheelchair").  Consequently, the Court finds that there is a genuine issue of material fact as to whether Vaughn was disabled, which precludes summary judgment on this issue.

Finally, Rent-A-Center argues that Vaughn was not substantially limited in any major life activity because he testified at his deposition that, at the time of the incident, he was capable of attending college classes, working full days as a substitute teacher, and to perform daily self-care tasks such as cooking, washing, and doing laundry.  The record shows, however, that Vaughn performed these activities using his dog or a cane.  Thus, this evidence alone is insufficient to warrant summary judgment on the issue of whether Vaughn had a disability.

---

[7]   Specifically Vaughn testified at his deposition as follows:
      Q.  In 2006 did you on occasion walk without the Dog?
      A.  No.
      Q. In 2006, would you on occasion walk with a cane without the dog?
      A.  Just—like I said, just around the trailer or just around the yard.
(Vaughn Dep. 46-47.)
      Similarly, Bice testified:
      Q.  Have you ever seen Mr. Vaughn leave [the house] without the dog?
      A.  No.
                  ***
      Q. Do you ever see him without the dog or without the cane?
      A.  No.
(Bice Dep. 28-30.)

### 3. Qualification as a Service Dog

For ADA purposes, a service animal is defined as "any guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability." 28 C.F.R. § 36.104. The federal regulation requires that a particular service animal be trained to work for a disabled individual. *Access Now, Inc. v. Town of Jasper, Tenn.*, 268 F.Supp.2d 973, 980 (E.D. Tenn. 2003). However, there is no requirement specifying the amount or type of training that an animal must receive to qualify as a service animal. *Id.* ("the issue of whether the horse is a service animal does not turn on the amount or type of training"); *Green v. Housing Auth. Of Clackamas Cty.*, 994 F.Supp. 1253, 1256 (D. Oregon 1998) ("[t]here is no requirement in any statute that an assistance animal be trained by a certified trainer"); *Bronk v. Ineichen*, 54 F.3d 425, 430-31 (7th Cir. 1995) (same). Similarly, there is no requirement regarding the type or amount of work a service animal must provide for the disabled person. *Access Now, Inc.*, 268 F.Supp.2d at 980. Instead, the relevant question is whether the animal helps the disabled person perform tasks to ameliorate the ADA disability. *Id.*; *Bronk*, 54 F.3d at 431 (focusing on the degree to which the purported service animal "aids the animal in coping with their disability").

Relying on *Baugher v. City of Ellensburgh, WA*, Rent-A-Center argues that Hannibal does not qualify as a service dog because there is no evidence that he was individually trained. No. CV-06-3026, 2007 WL 858627 (E.D. Wash. Mar. 19, 2007).[8] In *Baugher*, the court

---

[8] Rent-A-Center also cites *Prindable v. Ass'n of Apt. Owners of 2987 Kalakaua*, 304 F.Supp.2d 1245 (D. Haw. 2003) in support of its argument that Vaughn's showing is insufficient to establish that Hannibal is a service dog. In *Prindable*, the court held that the Fair Housing Act plaintiff had produced insufficient evidence to demonstrate that his dog was a service animal because the plaintiff did not submit adequate evidence of a physician's opinion that the dog was medically necessary. 304 F.Supp.2d at 1259-60. However, as *Prindable* is an FHA case and

examined whether the plaintiff's dog qualified as a service animal under the ADA.  *Id*. at *5.  The *Baugher* court held that, while there must be some record evidence distinguishing a purported service animal from an ordinary pet, a plaintiff need not produce "documented evidence of individual training."  *Id*.  Rather, the court focused on whether the dog was trained to perform specific work for the plaintiff and concluded that the plaintiff had failed to provide evidence on that issue.  *Id*.

Looking to the record in this case, the Court finds that Vaughn has provided sufficient evidence that Hannibal is a service dog to withstand summary judgment.  At his deposition, Vaughn testified both that he took a 1991 class in which he learned how to train service dogs generally and that he trained Hannibal specifically. [9] (Vaughn Dep. 42-43.)  The record also shows that at the time of the 2006 incident, Vaughn was in the process of obtaining, and

---

involved a condominium association whose bylaws required that "[a] disabled resident must provide appropriate *medical documentation* justifying the need for the assistance animal" it is distinguishable from Vaughn's case.  *See id*. at 1249 (emphasis added); *see also Grill v. Costco Wholesale Corp.*, 312 F.Supp.2d 1349, 1352 (W.D. WA 2004) (a business may ask if an animal is a service animal or what tasks the animal is trained to perform, it may not require special ID cards or ask about the person's disability).

[9] Q.  And if you're stable, you may on occasion, then, let the dog go out on a leash?

\*\*\*

A  Yeah, when I take him outside.  I mean, when I'm in a building, like right here, I don't let him wander.  He doesn't get up on –he's right here.  That's the way they're trained.  Or *that's the way I trained him*.

\*\*\*

Q. When you said you went through some training yourself or classes yourself with respect to a service dog, what type of training did you go through?
A.  How to hold the harness, how to teach the dog commands, show the – you know, reward the dog.  Your typical behavioral therapy type stuff.

(Vaughn Dep. 42-43 (emphasis added).)

ultimately did obtain, a certification from the State of Ohio that Hannibal was a service dog. (Vaughn Dep. 43; Bice Dep. 41-42).

More importantly, Vaughn has provided evidence of the specific tasks and work Hannibal is trained to perform.  Vaughn and his wife testified that Hannibal helps Vaughn keep his balance; helps him navigate uneven ground and stairs; helps him pick things up; helps him in and out of chairs, cars, beds, and showers; and helps him stand after falling.  When asked during his deposition, how Hannibal helps him maintain his balance Vaughn explained, "[h]e pulls to the right – or to the left, and I kind of recenter my gravity.  So I'm kind of pulling – I lean – kind of lean back, and I pull up on him.  And I follow his gait to walk."  (Vaughn Dep. 39.)  Bice testified similarly:

> Q.  . . . do you know what specifically the dog does to assist Mr. Vaughn?
>
> A.  Helps him keep his balance.  If he starts to lean over, the dog will keep him straight.  Walking—walk on uneven ground.  Help to go up and down stairs.  And if he falls and let's say I'm not around, the dog can help him get up.
>
> Q.  Has that happened before that he's fallen and the dog has helped him get up?
>
> A.  Yes, ma'am.
>
> Q.  These task you mentioned, balance, standing straight, walking stairs, as far as you know, is Mr. Vaughn able to do those things without the dog?
>
> A.  No, ma'am.

(Bice Dep 21-22.)

As Vaughn has introduced evidence that Hannibal was individually trained and that Hannibal performed tasks that helped Vaughn cope with his impaired ability to walk and stand, he has created a genuine issue of material fact regarding whether Hannibal was a service animal. Unlike the *Baugher* plaintiff, Vaughn has distinguished Hannibal from an ordinary house pet.

Consequently, summary judgment is inappropriate on this basis. The caselaw cited by Rent-A-Center does not alter this result.

### 4. Discrimination on the Basis of Disability

Rent-A-Center argues that it is entitled to summary judgment because Vaughn was not asked to leave the Delaware Store because of his disability; rather, because he and the dog were engaging in inappropriate behavior. In support of its claim Rent-A-Center points out that Vaughn was allowed to shop at the Delaware Store on a previous occasion, that Rent-A-Center does not have a blanket no animal policy, and that Rent-A-Center was not required to ask Vaughn whether Hannibal was a service dog before asking him to leave the store. (Def.'s Reply 8-10.) Rent-A-Center's arguments, however, turn on disputed factual questions regarding how Hannibal and Vaughn behaved during the September 13, 2006 incident at the Delaware Store.

Rent-A-Center's employees testified that Vaughn acted inappropriately by swearing at Pettry and that Hannibal misbehaved, brushing up against rental furniture and attempting to climb on a couch. Vaughn and his wife testified to the opposite and claimed that Vaughn never swore or raised his voice and that Hannibal behaved entirely appropriately while in the store. Given the competing and contradictory version of events presented by the parties, the Court finds that genuine issues of material fact exist on this issue. If Vaughn and Bice's version of events are believed, a reasonable jury could find that Pettry discriminated against Vaughn on the basis of his disability when he refused to let Vaughn shop with Hannibal. Therefore, summary judgment is inappropriate.

## B.  Assault and Battery

Under Ohio law, an employer is only liable for an intentional tort committed by his employee if (1) the tort was committed within the scope of employment; and (2) the behavior giving rise to the tort was calculated to promote the employer's business. *Byrd v. Faber*, 565 N.E.2d 584, 587 (Ohio 1991). In other words, "an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Id.* "Where the tort consists of a willful and malicious act . . . it is not generally considered within the scope of an agent's employment." *Finley v. Schuett*, 455 N.E.2d 1324, 1325 (Ohio App. Ct. 1982). Nevertheless, the "willful and malicious character of an employee's act does not always, as a matter of law, remove the act from the scope of employment." *Osborne v. Lyles*, 587 N.E.2d 825, 829 (Ohio 1992). Whether an employee's tort was committed in the scope of employment is a question of fact for the jury, unless reasonable minds can come to only one conclusion on the issue. *Id*.

Rent-A-Center argues that even if Pettry acted as Vaughn claims, it is entitled to summary judgment on the assault and battery claims because Pettry's actions were not authorized by Rent-A-Center and were not taken within the scope of his employment. Vaughn counters that his physical expulsion was within the scope of Pettry's employment and in furtherance of Rent-A-Center's business because the record shows that Pettry ordered Vaughn to leave the Delaware Store due to his concern that the dog would get hair and fleas on his employer's furniture. Rent-A-Center retorts that even if it gave Pettry the authority to enforce state cleanliness standards there is no evidence that such authority extended to the use of violence.

The Ohio Supreme Court has recognized that "an employer might be liable for an intentional tort if an employee injures a patron when removing her from the employer's business premises or blocking her entry" because the removal of unruly patrons is calculated to facilitate the peaceful operation of the business.  *Byrd*, 565 N.E.2d at 587.  In *Grubb v. Security National Bank and Trust Company*, No. 06-CA-1034, 2007 WL 756527 (Ohio App. Ct. Mar. 9, 2007) (unpublished), the Ohio Court of Appeals addressed a situation similar to the case *sub judice*.  In *Grubb*, the plaintiff appealed the trial court's grant of summary judgment against her on her respondeat superior claims against the defendant bank.  *Id*. at *1.  The plaintiff argued that the bank was liable for the actions of its employee bank manager who had grabbed her and kicked her in the crotch while expelling her from the bank.  *Id*.  The defendant bank argued that it could not be liable for the bank manger's intentional torts because his duties did not include *physically* removing customers and because he was not authorized to use force to remove a customer.  *Id*. at *1, *4.  The court reversed the trial court's grant of summary judgment against the plaintiff.  The court held that even if the employee's use of force was "against company policy and entirely unjustified, reasonable minds could find that he was facilitating or promoting" the defendant's business by removing customers from the premises.  *Id*. at * 4.  The court further reasoned that even if the employee had exceeded his authority or acted tortiously a reasonable jury could find that he acted in the scope of his employment.  *Id*.

Similarly in this case, under Vaughn's version of events a reasonable jury could find that Pettry was acting in the scope of his employment when he physically forced Vaughn out of the Delaware Store.  As in *Grubb*, Pettry's encounter with Vaughn took place during work hours.  Also like the employee in *Grubb*, employees in the Delaware Store, such as Pettry, had the

authority to ask unruly customers to leave the store. (Lemaster Dep. 27-28.) Moreover, Vaughn testified that Pettry told him he had to leave the store because "they don't allow pets in the store because he didn't want to get dog hair and fleas on any of the furniture because they have customers that are allergic to animal hair, and if they get sick then they can sue Rent-A-Center." (Vaughn Dep. 71.) Even if shoving Vaughn and trapping his hand in the door violated Rent-A-Center's policy for dealing with unruly customers, a reasonably jury could conclude that Pettry was trying to facilitate Rent-A-Center's business by promptly removing what he considered a disruptive customer, by preserving the cleanliness of the store's merchandise, and by protecting the company from future liability. Accordingly, summary judgment is unwarranted on this issue.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Rent-A-Center's Motion for Summary Judgment (doc. no. 29) in its entirety.

**IT IS SO ORDERED.**

<u>    s/Algenon L. Marbley    </u>
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**Dated: March 16, 2009**